# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
August 17, 2016 Session

## MARK A. SHEMPERT, ET AL. v. KIM WRIGHT COX, PERSONAL REPRESENTATIVE AD LITEM FOR THE ESTATE OF ROBERT DAVIS

### Direct Appeal from the Circuit Court for Shelby County
No. CT-004612-08    Donna M. Fields, Judge

_____

### No. W2015-02161-COA-R3-CV – Filed August 24, 2016

_____

This is an appeal of an order granting the unnamed defendant's motion for summary judgment. After being involved in an accident with an uninsured motorist, the plaintiff brought suit against his uninsured motor vehicle insurance carrier seeking coverage under the policy. The insurance carrier moved for summary judgment, arguing that the plaintiff was operating a vehicle not insured under the policy but available for his regular use, and therefore, was not covered under the policy. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Robert A. Cox and Ronna D. Kinsella, Memphis, Tennessee, for the appellants, Mark A. Shempert and Deborah A. Shempert.

Bradford Box and Jonathan David Stewart, Jackson, Tennessee, for the appellee, Farmers Insurance Exchange.

## OPINION

### Background & Procedure

This lawsuit arises from a September 2007 automobile accident in which Plaintiff Mark A. Shempert ("Mr. Shempert") was injured when his vehicle, a 2004 Sterling "Bobtail," owned by his employer, collided with a vehicle operated by an uninsured motorist, who died at the scene of the accident. We recounted the salient facts of this case in a related matter, *Farmers Ins. Exchange v. Shempert*, No. W2013-01059-COA-

R3-CV, 2014 WL 407903 (Tenn. Ct. App. Feb. 3, 2014) (*Shempert II*):

In September 2008, Mr. Shempert and his wife, Deborah A. Shempert (Ms. Shempert; collectively, "the Shemperts") filed an action for damages arising from the accident against [the uninsured motorist] and his personal representative *ad litem* in the Circuit Court for Shelby County (*Shempert I*). They also served unnamed Defendant Farmers Insurance Exchange (Farmers), their under-insured/uninsured motor vehicle insurance carrier, seeking benefits pursuant to the terms of their policy of insurance. *Shempert I* was assigned to Division 7 of the circuit court. Farmers answered in February 2009, asserting nine affirmative defenses and generally denying coverage under the policy. Although it denied coverage under the policy, Farmers did not dispute that the Shemperts' policy of insurance was effective when the accident occurred.

Following discovery in *Shempert I*, Farmers filed a declaratory judgment action against the Shemperts, Mr. Davis, and Mr. Davis's representative (*Shempert II*) in December 2011. Shempert II was assigned to Division 6 of the Circuit Court for Shelby County. In its complaint, Farmers recited that the Shemperts had filed their September 2008 complaint bearing docket number CT004612-08; that the Shemperts prayed for damages in excess of $500,000; that the allegations arose out of the September 2007 automobile accident; and that the Shemperts were covered under a policy of insurance issued by Farmers with effective dates of May 29, 2007 through November 29, 2007. Farmers asserted that it "owe[d] no coverage under its Policy . . . under the facts alleged in the Complaint filed by [the Shemperts in *Shempert I*] against it, and the corresponding investigation into those facts." Farmers further recited facts discovered during discovery in *Shempert I*, and prayed for "[f]or a declaration that no coverage is afforded under the insurance policy issued to [the Shemperts] . . . with regard to the litigation pending in the Circuit Court of Shelby County.

In February 2012, the Shemperts filed a motion to dismiss in *Shempert II*, asserting the action was barred where a previously filed lawsuit between the parties involving the identical issue was pending in another court in the same district. The Shemperts asserted that dismissal was proper pursuant to the doctrine of prior suit pending. Following a hearing on February 24, 2012, the trial court denied the Shemperts' motion to dismiss, finding that the subject matter in *Shempert I* differed from the matter asserted in *Shempert II*, namely whether Farmers must "afford insurance coverage to [the Shemperts] under the circumstances[.]" The Shemperts filed an

answer to Farmers' complaint in April 2012, and *Shempert I* was stayed pending resolution of *Shempert II*. The parties filed cross-motions for summary judgment in *Shempert II*. The trial court heard the motions for summary judgment on March 1, 2013. By order entered April 5, 2013, the trial court awarded summary judgment in favor of Farmers and made the judgment final pursuant to Tennessee Rule of Civil Procedure 54.02. The Shemperts filed a timely notice of appeal to this Court.

*Id.* at *1-2. On appeal, this Court reversed the decision of the trial court and remanded *Shempert II* for dismissal on the basis of prior suit pending. *Id.* at *3.

On March 6, 2014, Farmers filed a motion for summary judgment in *Shempert I*, the case now before this Court. In its motion, Farmers argued that it was entitled to summary judgment because Mr. Shempert was operating an employer owned vehicle available for his regular use at the time of the accident. In support of its argument, Farmers pointed to the specific language of the Shemperts' insurance contract's uninsured motorist provision:

**PART II – UNINSURED MOTORIST**

**Coverage C – Uninsured Motorist Coverage
(Including Underinsured Motorist Coverage)**

We will pay all sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by the **insured person** and, if shown in the Declarations, **property damage** caused by an **accident**. The **bodily injury** must be caused by **accident** and arise out of the ownership, maintenance or use of the **uninsured motor vehicle**. Determination as to whether an **insured person** is legally entitled to recover **damages** or the amount of **damages** shall be made by agreement between the **insured person** and us. If no agreement is reached, the decision may be made by arbitration.

. . .

**ENDORSEMENT ADDING REGULAR AND FREQUENT USE
EXCLUSION TO PART II**

It is agreed that the following exclusion is added to the Exclusions under Part II of your policy.

3

Uninsured Motorist Coverage (and Underinsured Motorist Coverage if applicable) does not apply to damages arising out of the ownership, maintenance, or use of any vehicle other than **your insured car** (or **your insured motorcycle** if this is a motorcycle policy), which is owned by or furnished or available for the regular use by you or a **family member**.

This endorsement is part of your policy.  It supersedes and controls anything to the contrary.  It is otherwise subject to all other terms of the policy.

The insurance policy defined "your insured car" as:

**Your insured car** means:

1.     The vehicle described in the Declarations of this policy or any **private passenger car** or **utility car** with which you replace it.

. . .

5. Any other **private passenger car**, **utility car**, or **utility trailer** not owned by or furnished or available for regular use by you or a **family member**.  This includes such vehicles while rented by you on a daily basis or weekly basis.  But no vehicle shall be considered as **your insured car** unless there is a sufficient reason to believe that the use is with permission of the owner, and unless it is used by you or a **family member**.

According to Farmers, because Mr. Shempert was not operating his insured car at the time of the accident and was instead operating a vehicle furnished or available for his regular use by his employer, there was no coverage under the insurance policy.

The trial court conducted a hearing on June 26, 2015, and entered an order granting Farmers' motion for summary judgment the same day.  The court concluded that the vehicle driven by Mr. Shempert "[did] not fall within the definition of "your insured car" as set forth in the policy."  Further, the court determined that based on the facts at bar, "the regular use exclusion of the policy obviates such coverage for Mr. Shempert as the vehicle was available for his regular use and did not meet the definition of 'your insured car.'"  Lastly, the court found that "the regular use exclusion of the policy is clear and unambiguous and, under the foregoing facts, does not contravene the public policy of this State."  The Shemperts appealed.

## Issues Presented

The Shemperts present the following issues for review on appeal:

I.      Whether, when read in light of the policy as a whole, the "Regular Use" exclusion contained within the Appellants' insurance policy is ambiguous such that it should be interpreted in favor of the Appellants.

II.     Whether, under the stipulated facts of this case, application of the "Regular Use" exclusion contained within the Appellants' insurance policy defeats the purpose of T.C.A. § 56-7-1201 and as a result, violates public policy concerns such that the Trial Court's grant of summary judgment should be reversed.

## Standard of Review

We review a trial court's ruling on a motion for summary judgment de novo with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Questions regarding the extent of insurance coverage also present issues of law as they involve the interpretation of contractual language. *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012) (citing *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 436 (Tenn. 2012); *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008)). Therefore, we afford no presumption of correctness to the trial court's interpretation. *Id.* (citing *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009)).

> "[I]nsurance policies are, at their core, contracts." *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 527 (Tenn. 2012) (Koch, J., dissenting). As such, courts interpret insurance policies using the same tenets that guide the construction of any other contract. *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). Thus, the terms of an insurance policy "'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" *Clark*, 368 S.W.3d at 441 (quoting *U.S. Bank*, 277 S.W.3d at 386-87). The policy should be construed "as a whole in a reasonable and logical manner," *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998), and the language in dispute should be examined in the context of the entire agreement, *Cocke Cty Bd. of Hwy. Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985).

In addition, contracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993); *VanBebber v. Roach*, 252 S.W.3d 279, 284 (Tenn. Ct. App. 2007). However, a "strained construction may not be placed on the language used to find ambiguity where none exists." *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

*Garrison*, 377 S.W.3d at 663-64. "'The "ordinary meaning" envisioned is the meaning which the average policy holder and insurer would attach' to the policy language." *Artist Bldg. Partners v. Auto-Owners Mut. Ins. Co.*, 435 S.W.3d 202, 216 (Tenn. Ct. App. 2013) (quoting *Swindler v. St. Paul Fire & Marine Ins. Co.*, 444 S.W.2d 147, 148 (Tenn. 1969)).

**Analysis**

**I.**

The Shemperts first argue that the application of the "regular use" exclusion in their insurance policy creates ambiguity by "chang[ing] the meaning of a specific, repeated phrase otherwise used to implicate fault, and as a result, should be construed against Farmers." Unlike the plaintiff in *Gillard v. Taylor*, 342 S.W.3d 492 (Tenn. Ct. App. 2009), who challenged the term "regular use" itself in the plaintiff's insurance policy, the Shemperts instead argue that the "regular use" exclusion in the endorsement to their policy alters the meaning of the phrase "damages arising out of the ownership, maintenance or use" and creates ambiguity in the policy as a whole. According to the Shemperts, that specific phrase is used a total of nine times in the policy, including the endorsement, and is used to indicate the fault of the person owning, maintaining, or using the vehicle in eight of those instances. The Shemperts argue that in the ninth instance, which is located within the "regular use" exclusion, the phrase, if interpreted the same way it was used in the other eight instances, appears to exclude uninsured motorist coverage in instances of contributory fault where the insured was not in his or her insured vehicle at the time the damages occurred. We disagree.

This is not a case where the parties dispute the meaning of a single term. Rather, it appears that the Shemperts are attempting to rewrite their insurance policy by interpreting broad phrases absent their context. Seven of the eight uses of the phrase "arising out of the ownership, maintenance, or use . . ." occur within the "Liability" portion of the insurance policy. It is unsurprising, then, that those particular instances

refer to the insured's fault. However, even those portions must be read in their proper context. For example, the Shemperts' insurance policy contains the following provisions:

**PART I – LIABILITY**

**Coverage A – Bodily Injury**

**Coverage B – Property Damage**

We will pay damages **for which any insured person is legally liable because of bodily injury to any person and property damage** arising out of the ownership, maintenance, or use . . . .
. . . .

**Exclusions**

This coverage does not apply to:

1. Bodily injury or property damage arising out of the ownership, maintenance or use of a vehicle **while used to carry persons or property for a charge.** This exclusion does not apply to shared-expense car pools.
. . . .

9. Bodily injury or property damage arising out the ownership, maintenance, or use **of any motorized vehicle with less than four wheels**.
. . . .

14. Bodily injury or property damage arising out of the ownership, maintenance, or use by any person **of a vehicle in which you have transferred full ownership interest but the transfer does not comply with the transfer of ownership provisions of the state motor vehicle law**.

(Emphasis added.) In these examples, the phrase "arising out of the ownership, maintenance, or use . . ." is followed by the circumstances in which coverage either does or does not apply. Clearly, the policy's provisions speak not to the type of damages, but the circumstances in which those damages occur. Similarly, the final two uses of the phrase, which are found in the uninsured motorist provision and "regular use" exclusion, respectively, are concerned not with types of damages, but circumstances in which those damages occur. Simply put, we will not force a "strained construction . . . on the language used to find ambiguity where none exists." *Farmers-Peoples Bank v. Clemmer*,

7

519 S.W.2d 801, 805 (Tenn. 1975). Accordingly, we conclude that the "regular use" exclusion in the insurance policy does not create any ambiguity.

## II.

The Shemperts acknowledge that they seek to have this Court overturn existing law. Tennessee Code Annotated sections 56-7-1201, *et seq.*, provide for uninsured motorist coverage in automobile insurance policies.[1] "In *Terry v. Aetna [Casualty and Surety] Co.*, 510 S.W.2d 509 (Tenn. 1974), our Supreme Court held that Tennessee's uninsured motorist statutes do not provide for broad coverage, but effectuate a limited and narrow purpose." *Gillard v. Taylor*, 342 S.W.3d 492, 495 (citing *Terry*, 510 S.W.2d at 513-14). Moreover, In *Hill v. Nationwide Mut. Ins. Co.*, 535 S.W.2d 327 (Tenn. 1976), our supreme court discussed that

> Authorities accepting the [narrow coverage theory] point out that vehicular liability insurance is ordinarily written upon and follows particular scheduled vehicles. It is not written upon named individuals, and is not like general health or accident insurance coverage. The liability policy covers a scheduled vehicle, and extends its protection, through omnibus clauses, not only to the named insured but to members of his family and other persons using the vehicle with permission, subject to conditions and exclusions.

*Hill*, 535 S.W.2d at 330 (footnote omitted).

More recently, we have analyzed the application of "regular use" exclusions in automobile insurance policies within the broader context of Tennessee's uninsured motorist statutes. In *Shepherd v. Fregozo*, 175 S.W.3d 209 (Tenn. Ct. App. 2005), a police officer who was injured while driving his department-assigned patrol car brought suit against his automobile insurer to recover under his policy's uninsured motorist provision. The insurer filed a motion for summary judgment, relying on the "regular use" exclusion of other motor vehicles under its uninsured motorist coverage. *Id.* at 210. The insurer's motion was granted and the insured officer appealed to this Court, arguing that

---

[1]"The purpose of the Tennessee Uninsured Motorist Statute is to provide relief to insured victims who suffer 'bodily injury, sickness or disease, including death' caused by those uninsured and unable to respond in monetary damages. [*Garrison v. Bickford*, 377 S.W.3d 659, 665-66 (Tenn. 2012)]. Thus, the insured is 'protect[ed] by making the insurance carrier stand as the insurer of the uninsured motorist.'" Meelad Hanna, *Statutory Ambiguity—Garrison v. Bickford: Determining the Breadth of "Bodily Injury" in Uninsured Motorist Statutes*, 44 U. MEM. L. REV. 703, 705 (2014) (quoting *Stallcup v. Duncan*, 684 S.W.2d 643, 646 (Tenn. Ct. App. 1984) (internal citations omitted).

the "regular use" exclusion violated public policy. *Id.* Taking into consideration that "[a]s late as November 2002, the Supreme Court of Tennessee has reiterated the long-standing rule in *Terry v. Aetna Casualty & Surety Co.*, 510 S.W.2d 509 (Tenn. 1974) that Tennessee's uninsured motorist statutes do not provide for broad coverage[,]" *Shepherd,*175 S.W.3d at 224 (*citing Poper ex rel. Poper v. Rollins*, 90 S.W.3d 682, 687 (Tenn. 2002)), we held that "the 'regular use' exclusion does not contravene public policy." *Id.* at 226.

In *Gillard v. Taylor*, 342 S.W.3d 492 (Tenn. Ct. App. 2009), a case factually similar to *Shepherd,* we reiterated that a "regular use" exclusion in insurance policies does not violate Tennessee public policy and determined that the police officer in question's daily use of a police cruiser constituted "regular use" within the meaning of his policy. *Id.* at 500. Accordingly, we held that the insurer's uninsured motorist policy did not provide coverage to the police officer in that case. *Id.*

Here, the Shemperts argue that the "regular use" exclusion in their insurance policy undermines Tennessee's uninsured motorist statutes and, as a result, violates public policy. This is not a new argument, and it is one we have rejected before. *See Gillard*, 342 S.W.3d 492; *Shepherd* 175 S.W.3d 209. As in *Gillard* and *Shepherd*, we also conclude here that the "regular use" exclusion in the Shemperts' insurance policy does not violate public policy.

## Conclusion

For the foregoing reasons, the judgment of the circuit court is affirmed. Costs of this appeal are taxed to the Appellants, Mark A. Shempert and Deborah A. Shempert, and their surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE